UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA ARNOLD,<br><br>   Plaintiff,<br><br>  v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>   Defendant. | No. CV 23-3974 PA (AGRx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

  This is an Employee Retirement Income Security Act ("ERISA") action for recovery of medical benefits. Plaintiff Linda Arnold ("Plaintiff" or "Arnold") seeks benefits under a an employee health and welfare benefits plan ("Plan") sponsored by the Health Care Employees/Employer Dental & Medical Trust ("Plan Sponsor"). The Plan is fully insured under a contract between the Plan Sponsor and United Healthcare Insurance Company ("United" or "Defendant"), and funded by the payment of premiums.

  United filed pages 1-569 of the Administrative Record ("AR") (Docket Nos. 31, 43) which the Court received without objection. (Docket No. 86.) Plaintiff objected to the admission of pages 570-1226 of the AR, filed by Defendant on October 31, 2023. (Docket Nos. 47, 50 and 86.) The disputed part of the AR consists of nationally accepted

1 reimbursement and coding policies or United's internal policies that United relied upon in
2 formulating its reimbursement policies and in adjudicating the claims at issue in this case.
3 (Docket Nos. 50-1 at pp. 23-24, 51 at pp. 5-8, and 61-1 at pp. 11-13.)  The Court has
4 considered Plaintiff's oral and written objections to the admission of this part of the record.
5 (Docket Nos. 50, 63-1 at pp. 11-13.)  Because the Court concludes that the Plaintiff had
6 sufficient notice of these policies, and failed to demonstrate any prejudice in her written
7 submissions or when asked to do so during the bench trial, the Court admits pages 570-1226
8 as part of the AR.[1/]

9       Following the filing of the parties' Opening and Responsive Trial Briefs, the
10 submission of their respective Proposed Findings of Fact and Conclusions of Law, and their
11 objections to each other's Proposed Findings of Fact and Conclusions of Law, the Court,
12 sitting without a jury, conducted a bench trial on January 9, 2024.

13       Having considered the materials submitted by the parties and after reviewing the
14 evidence, the Court makes the following findings of fact and conclusions of law pursuant to
15 Federal Rule of Civil Procedure 52(a).  Any finding of fact that constitutes a conclusion of
16 law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a
17 finding of fact is hereby adopted as a finding of fact.

18 **I.**    **Findings of Fact**

19     1.    This is an action for recovery of medical benefits under ERISA.  This Court
20 has jurisdiction of this matter pursuant to 29 U.S.C. §§ 1132(a) and 28 U.S.C § 1331.

---

[1/]    Plaintiff's objection also fails because, as explained below, the Court has agreed to apply a de novo standard of review in this case.  It is well established that "consideration of new evidence is permitted . . . in conjunction with *de novo* review of denial of benefits." Abatie v. Alta Health & Life Ins Co., 458 F.3d 955, 969 (9th Cir. 2006) ("Today, we continue to recognize that, in general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion, but may admit additional evidence on de novo review.").  See also, Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1110 (9th Cir. 2003) ("While under an abuse of discretion standard our review is limited to the record before the plan administrator. . ., this limitation does not apply to *de novo* review.") (citations omitted).

2. Venue is proper in this district because a substantial part of the events giving rise to the claim occurred within the Central District of California. 28 U.S.C. § 1391(b)(2).

3. The parties dispute the applicable standard of review in this matter. Plaintiff argues that the trial of this action is subject to the Court's de novo review. (Docket No. 63-1 at pp. 13-15.) Defendant contends that the abuse of discretion standard applies. (Docket No. 61-1 at p. 22.)

4. Plaintiff, a beneficiary of the Plan, filed a First Amended Complaint ("FAC") for recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). (Docket No. 19.)

5. United was delegated and assigned the responsibility of the Plan's Claims Fiduciary (claims administrator) by the Plan Sponsor. (AR 200.) United had discretionary authority to "interpret the terms of the Plan and to determine eligibility for benefits in accordance with the terms of the Plan." (Id.)

6. Advanced Weight Loss Surgical Association and Minimally Invasive Surgical Association ("Medical Providers") treated Plaintiff for obesity, and submitted claims for medical benefits on her behalf for services on August 12, 2020 and September 3, 2020. (Docket No. 19; AR 206-17, 421, 535.)

7. The Plan reimburses its beneficiaries for "Covered Health Care Services" received from Network or Non-Network Providers. (AR 11-12.)

8. For reimbursement for out-of-network services there must be "Covered Health Care Services." (AR 46-47.)

9. For "Obesity - Weight Loss Surgery," the Plan states that out-of-network benefits are not "Covered Health Care Services" and are therefore excluded. (AR 31, 98.)

10. The Plan also excludes "Health care services related to a non-Covered Health Care Service." (AR 97.)

11. Regarding reimbursement for Covered Health Care Services, the Plan provides that "Allowed Amounts are calculated in accordance with our reimbursement policy guidelines. We develop these guidelines after review of all provider billings in accordance with one or more of the following methodologies:

|   |   |
|---|---|
| | As shown in the most recent edition of the Current Procedural Terminology (CPT), a publication of the American Medical Association, and/or the Centers for Medicare and Medicaid Services (CMS). |
| | As reported by generally recognized professionals or publications. |
| | As used for Medicare. |
| | As determined by medical staff and outside medical consultants pursuant to other appropriate source." |

(AR 127.)

12. The Plan states that United reviews and determines benefits in accordance with reimbursement policies developed in accordance with the CPT, a publication of the American Medical Association and/or the Centers for Medicare and Medicaid Services ("CMS"). (AR 57.)

13. CMS' National Correct Coding Initiative Policy states that it was developed by CMS "to promote national correct coding methodologies and to control improper coding that leads to inappropriate payment...[t]he coding policies are based upon coding conventions defined in the American Medical Association's Current Procedural Terminology (CPT) Manual, national and local Medicare policies and edits, coding guidelines developed by national societies, standard medical and surgical practice, and/or current coding practice." (AR 581.)

14. United's Assistant Surgeon Policy states that providers are "responsible for submission of accurate claims. This reimbursement policy is intended to ensure that you are reimbursed based on the code or codes that correctly describe the health care services provided. [United's] reimbursement policies may use Current Procedural Terminology (CPT®*), Centers for Medicare and Medicaid Services (CMS) or other coding guidelines." (AR 1222.)

15. The Assistant Surgeon Policy also states that "[United's] standard reimbursement for Assistant-at-Surgery services on the Assistant-at-Surgery Eligible List which are provided by a Physician is 16% of the Allowable Amount for eligible surgical procedures. This percentage is based on CMS." (AR 1223.)

16. CMS' National Correct Coding Initiative Policy also states that "[i]f a hernia repair is performed at the site of an incision for an open or laparoscopic abdominal procedure, the hernia repair (e.g., CPT codes 49560-49566, 49652-49657) is not separately reportable. The hernia repair is separately reportable if it is performed at a site other than the incision and is medically reasonable and necessary. An incidental hernia repair is not medically reasonable and necessary and shall not be reported separately." (AR 740.)

17. The UnitedHealthcare Care Provider Administrative Guide and Evaluation and Management (E/M) Policy include requirements and guidelines for providers' submission of medical records and attestations/authentications for medical records in support of claims for benefits. (AR 1026-27, 1217-21.)

18. On June 9, 2020, Plaintiff called United's representative (Rebecca). (AR 569; 548-49.) Plaintiff asked Rebecca, "do I have the . . . sleeve, the gastric sleeve in my benefits?" (AR 569.) United's representative indicated that for bariatric weight loss surgery, the amount Plaintiff would pay would be based on where the covered health care service is provided. (Id.) Rebecca informed Plaintiff that an authorization would be needed, and advised her to reach out to her medical providers to begin this process. (Id.) With respect to the authorization requirement, the Plan provides "[w]hen you choose to receive certain Covered Health Care Services from out-of-Network providers, you are responsible for obtaining prior authorization before you receive these services." (AR 55.)

19. United's internal claim notes show that United quoted member details for Plaintiff on June 9, 2020 related to "bariatric info," and specifically, a "gastric stomach sleeve." (AR 548-49.)

20. Prior to treating Plaintiff for obesity, Medical Providers "performed an insurance verification which confirmed that Ms. Arnold['s] insurance policy thru his [sic] employer and administered by [United] had a bariatric exclusion." (AR 413.)

21. To treat Plaintiff's obesity, Medical Providers scheduled Plaintiff for bariatric surgery with sleeve gastrectomy, and referred her to Total Health Surgery Center for a pre-surgical consultation and endoscopy on August 12, 2020 in order to rule out possible complications for her upcoming bariatric surgery. (AR 419-21.)

22. The consult report states that "this is a pleasant 56-year old female with history of significant obesity who is scheduled for bariatric surgery with sleeve gastrectomy. The patient has been having symptoms of acid reflux for several years. The patient will be evaluated by an upper endoscopy to rule out possible esophagitis, hiatal hernia. Barrett's esophagus, gastritis, peptic ulcer disease, H. pylori infection, or any other findings that would complicate her upcoming bariatric surgery." (AR 421.)

23. The operative report of the endoscopy found a 2 cm eccentric hiatal hernia and mild diffuse antral erythema. (AR 422-23.)

24. Medical Providers billed United $10,000 for "Surgery" for the August 12, 2020 endoscopy. (AR 535, 558, 562.)[2]

25. United denied Medical Providers' claim for the endoscopy because "there was insufficient documentation to support the billed charges...and the operative report submitted does not include a physician's signature or attestation to authenticate the medical records." (AR 565.)

26. Medical Providers did not provide any further documentation or file an appeal relating to the denial of the claim for the August 12, 2020 endoscopy. (Id.)

27. On September 3, 2020, Medical Providers provided further obesity treatment to Plaintiff. Plaintiff underwent a hiatal hernia repair and a sleeve gastrectomy in the same surgical session. Surgeon Frazin M. Feizbakhsh, M.D. ("Dr. Feizbaksh") performed the

---

[2] Medical Providers also billed $1,046 for an office visit on that day, but Plaintiff's counsel advised the Court at the bench trial that Plaintiff has since abandoned this claim.

-6-

sleeve gastrectomy and surgeon Sean Rim, M.D. ("Dr. Rim") performed the hiatal hernia repair. (AR 424-25.) The operative report notes a "5 mm incision in the right upper quadrant," another 5 mm trocar was introduced in the upper left quadrant, another 5 mm trocar was introduced in the left lower quadrant and 15 mm trocar was introduced into the perumbilican incision." (AR 425.) The hernia repair was completed, and "at this point, Dr. Feiz proceeded with performing a sleeve gastrectomy...Closure of all wounds were performed by Dr. Feiz." (Id.)

28. Medical Providers did not bill United for the sleeve gastrectomy. Medical Providers billed United separately for two $45,000 surgeon fees (Dr. Rim as the main surgeon and Dr. Feizbaksh as the assistant) using the CPT code for the hiatal hernia repair. (AR 278, 286.)[3]

29. United denied the Rim surgeon claim because the hernia repair was related to the non-covered gastric sleeve procedure and therefore also not covered by the Plan. (AR 245-46, 251-54, 358-59, 370.)

30. United denied the Feizbaksh assistant surgeon claim because the hernia repair was related to the non-covered gastric sleeve procedure and therefore also not covered by the Plan. (AR 277-83, 286.)[4]

31. Medical Providers appealed the denial of the Rim surgeon claim on July 19, 2021. (AR 412-18.)

32. Medical Providers appealed the denial of the Feizbaksh surgeon claim on October 17, 2022. (AR 431-38.)

33. United denied the Rim surgeon claim appeal on September, 3 2021, concluding that the claim had been processed correctly by the Plan Administrator. (AR 507-18.)

---

[3] Plaintiff has also abandoned her original claim for an office visit with Dr. Rim on the same day as her surgery.

[4] United made one payment in error in the amount of $ 207.43 on the assistant surgeon claim but subsequently corrected the error, and denied the claim in full. (AR 279, 492.)

34. United denied the Feizbaksh surgeon claim appeal on October 23, 2022, concluding that the claim had been processed correctly by the Plan Administrator. (AR 492, 521.)

**II.   Conclusions of Law**

1. Because there is a question regarding the applicable standard of review in this matter, the Court will apply the more rigorous de novo standard.

2. When the standard of review is *de novo*, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." Id. In reviewing the Administrative Record, "the Court evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate," Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program, 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010), and decides which parties' conflicting evidence is more likely to be true. Kearney v. Standard Ins. Co., 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc). In a *de novo* review, "the burden of proof is placed on the claimant" to establish entitlement to plan benefits by a preponderance of the evidence. Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010).

**III.   Analysis**

The Court concludes, after reviewing the Administrative Record, and considering the arguments and Trial Briefs submitted by the parties, that Plaintiff failed to satisfy her burden that she was entitled to benefits under the Plan for Medical Providers' services. Plaintiff's evidence is simply insufficient to support her claims under 29 U.S.C. §1132(a)(1)(B).

The Administrative Record demonstrates that United's decision to deny reimbursement for the endoscopy and the hiatal hernia repair was consistent with the terms of the Plan. There is no dispute that Medical Providers never provided the records requested in order to support the August 12, 2020 endoscopy claim. Moreover, United's determination that Plaintiff's hernia repair was related to the non-covered gastric sleeve procedure and therefore excluded, was justified by the evidence – and the reasonable inferences drawn from that evidence – that:

(1) Plaintiff was being treated by Medical Providers for obesity, and her hiatal hernia was diagnosed after the referral for a pre-operative consultation and endoscopy to determine whether there were any potential complication risks for her upcoming non-covered bariatric surgery;

(2) Despite the fact that Plaintiff and her surgeons knew that the Plan excluded obesity treatment from out of network providers, she went forward with the procedure in a "two in one" surgical session;

(3) both surgeons used the same incision point for the two procedures, suggesting that the surgeries were related and that the hernia surgery was "incidental" to the gastric sleeve procedure, based on the relevant reimbursement policies and industry standards; [5] and

(4) both surgeons billed the same surgical fee amount for the hernia repair despite the fact that one was allegedly the primary surgeon and one was the assistant, and standard reimbursement for an assistant surgeon is 16% of the allowable amount for a covered procedure, suggesting that the two surgeons "double billed" for the hernia repair in an attempt to circumvent the policy exclusion.

Based on this evidence regarding Plaintiff's and her surgeons' awareness of the policy exclusions, the timing and circumstances of the two procedures and the manner in which they were billed, United's decision to deny the claims for the hiatal hernia surgery was appropriate, reasonable and correct.

Thus, based on its de novo review of the evidence and the reasonable inferences drawn therefrom, the Court concludes that United's decisions to deny reimbursement for Plaintiff's claims were consistent with the terms of the Plan requiring submission of

---

[5] This is true regardless of whether there was one or four incision points – the operative notes – the only contemporaneous evidence submitted – state only that after Dr. Rim repaired the hernia, Dr. Feizbaksh performed his procedure and closed all wounds. The operative notes do not state or otherwise suggest that Dr. Feizbaksh needed to make a separate or new incision in order to perform the bariatric surgery.

-9-

complete and accurate medical records, and excluding coverage for out of network services for obesity treatment and services relating to obesity treatment.

### Conclusion

For all of the foregoing reasons, the Court concludes that Plaintiff has not carried her burden to establish by a preponderance of the evidence that she was entitled to medical benefits for Medical Providers' services on August 12, 2020 and September 3, 2020 under the terms of the Plan. The Court will enter Judgment in favor of defendant United Healthcare Insurance Company.

DATED: February 12, 2024

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE